**Klovensky v. Moore**

C.P. of Franklin County, no. 2002-394.

*Denis M. DiLoreto,* for plaintiffs.
*John N. Keller,* for defendant.

HERMAN, *J.,* July 18, 2002—

## BACKGROUND

Plaintiff filed a complaint seeking damages as a result of a car accident which occurred on May 15, 2000, when defendant's car rear-ended plaintiff's car. Plaintiff alleges he suffered physical injuries and economic losses. De-

fendant admitted liability but defends against damages. In her May 13, 2002 deposition, defendant was asked whether she sought medical treatment after the accident or experienced any injuries. Aside from a few temporary aches and pains, defendant denied sustaining any injuries or seeking medical attention. (N.T. pp. 16-18.) Plaintiff then noticed defendant with an intention to serve Cumberland Valley Family Physicians with a subpoena to produce documents relating to any medical treatment rendered to defendant after the accident. Defendant objects to the subpoena on grounds of relevance and the physician-patient privilege.

## DISCUSSION

This discovery is sought pursuant to Pa.R.C.P. 4003.1 which permits a party to "(a) . . . obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . (b) It will not be ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Plaintiff argues he is entitled to this information in the event defendant presents evidence and argument at trial to show the collision was not violent enough to cause the injuries plaintiff alleges he suffered. Plaintiff points to defendant's answer in which she admits that her car collided with the rear of plaintiff's car but denies "that the impact amounted to a 'crash.'" (Answer to the complaint, ¶6.) Despite defendant's denial at her sworn deposition that she suffered injuries or sought medical attention after the accident, plaintiff believes he is entitled to

examine defendant's records firsthand to verify that she was truthful and accurate on this point. Plaintiff's reasoning is that if defendant herself sought medical treatment, this will allow him to counter defendant's assertion that the accident was not violent enough to cause plaintiff's injuries (soft tissue injuries, notoriously difficult to prove by objective means) but will support plaintiff's contention that his injuries are genuine and not the result of falsehood, exaggeration or malingering. Defendant contends that whether defendant herself sought treatment or was injured does nothing to advance plaintiff's claim that he was injured and therefore the information is not relevant.

It is well-established that "relevance" is interpreted in a broader and more flexible manner in the discovery context as opposed to determining the admissibility of evidence for trial. Any conceivable basis on which a discovery request may be relevant supports access to that information. *Schwab v. Milks,* 8 D.&C.4th 557 (Lacka. Cty. 1990); Goodrich-Amram 2d, 4003.1(a).

Defense counsel assured the court and plaintiff's counsel at oral argument that no response along the lines plaintiff anticipates will be necessary because defendant is not planning to present expert biomechanical or accident reconstruction testimony to prove the accident was not violent in terms of its physical impact on the persons in the two cars. Despite these assurances, it is a reasonable strategy for plaintiff to prepare such a response in light of paragraph 6 of defendant's answer, and also because a plaintiff alleging soft tissue injuries is often limited to proving damages through subjective recollection of the pivotal event and a subjective experience of pain

and suffering. Whether defendant herself suffered any injuries or sought medical treatment as a result of the accident clearly is relevant to plaintiff's ability to counter the defendant's downplaying of the seriousness of the accident under the flexible approach to discovery set out in Rule 4003.1. Whether this flexible approach trumps the firmly-established physician-patient privilege is the more pointed question, however.

The right to privacy is recognized under both the United States and Pennsylvania Constitutions. *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980). This right includes the right to be let alone. *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980). It specifically includes a patient's right to keep his medical records confidential. *In re B,* 482 Pa. 471, 394 A.2d 419 (1978); *Commonwealth v. Larsen,* 452 Pa. Super. 508, 682 A.2d 783 (1996). Only a compelling state interest can override a patient's privacy rights. *Fabio v. Civil Service Commission of the City of Philadelphia,* 489 Pa. 309, 414 A.2d 82 (1980).

The privilege is also statutorily protected under 42 Pa.C.S. §5929 which prohibits a physician from revealing in a civil proceeding any information which might tend to blacken the patient's character without the patient's consent unless the patient brings a personal injury action. The purpose is to create a confidential atmosphere in which the patient will feel free to disclose any information which may help the physician render appropriate treatment. To fall within the statutory privilege,

the information must come to the physician by disclosure or communication from the patient, as opposed to the physician's own direct observation and examination, and also must tend to blacken the patient's character or reputation. *Stenger v. Lehigh Valley Hospital Center,* 530 Pa. 426, 609 A.2d 796 (1992); *In re June 1979, supra.*

In *Stenger,* plaintiffs, whose family members contracted AIDS through tainted blood, sued the hospital and blood bank for negligence. Plaintiffs sought the identities of anonymous blood donors in order to question them about the specifics of the facilities' blood screening procedures. The defendants conceded that this information was relevant but opposed discovery based on the physician-patient privilege. Concerned about exposing a donor or the recipients to ridicule or embarrassment, the court fashioned a solution balancing those concerns with the need to maintain a safe blood supply for the public. The court allowed plaintiffs to discover the dates of shipments of the donor's blood and the results of blood tests performed on blood recipients while refusing to order disclosure of the identities of persons who received the donor's blood. The information concerning shipment dates and results would bear no names and addresses, thereby protecting the anonymity of the donor and the recipients.

The instant plaintiff cites *Stenger* to support, at the very least, limited discovery of defendant's medical records relating to the time shortly after the accident and to any of defendant's medical conditions conceivably resulting from the accident. However, the information which the *Stenger* court ruled could be disclosed pertained to a matter of clear public import—the safety of

the blood supply—whereas in the case at bar there is no compelling state interest at stake to justify revealing privileged information.

Plaintiff also cites *Rearick v. Griffith,* 27 D.&C.2d 451 (1962), a personal injury suit arising from a car accident in which plaintiff alleged defendant was in no condition to drive a car because of intoxication and sought defendant's treatment records for the period immediately after the accident. Defendant conceded the relevance of the records but raised the physician-patient privilege. The court ordered discovery under precedent which held that only communications where the patient discloses personal medical facts to the physician are protected, whereas information gleaned by the physician through his own direct examination and observation of the patient is not protected. This approach to the privilege was confirmed later in *In re June 1979* and *Stenger, supra.*

*Rearick* does not help plaintiff in overcoming the privilege. In that case it was beyond question that there was at least some information to discover—the results of the physician's examination and observation of the defendant during the time immediately after the accident. In the case at bar, we have before us no reason to believe defendant suffered any injuries or sought treatment unless we were to simply dismiss the truthfulness or accuracy of her sworn deposition. If plaintiff had come forward with particular grounds to support the notion that defendant's deposition was intentionally deceitful or even just inaccurate, we might have some basis for ruling otherwise. In the absence of such particulars, we will not permit what amounts to mere speculation to defeat this important privilege.

We also take note of *Topper v. Shatzler,* 19 Franklin Cty. L.J. 63 (2001), in which this court held that a plaintiff in an action for physical injuries did not put his mental health at issue by claiming damage to the nerves and nervous system, pain and suffering and loss of life's pleasures. These were simply the traditional tort claims for damages which were a natural consequence of, and attendant to, what was essentially a physical injury. Insofar as plaintiff did not put his mental health at issue by claiming such damages, we did not even reach the question of whether he had waived the psychiatrist/psychologist-patient privilege.

Analogously, we here find that defendant has not placed her medical condition at issue simply by refusing to admit that the collision amounted to a "crash." We are troubled by the prospect of every personal injury action becoming an occasion to override a firmly-established privacy interest which promotes public health by shielding confidential medical communications from unnecessary disclosure. Absent other circumstances, surely not every personal injury defendant places his own medical condition at issue simply by denying a plaintiff has suffered as claimed.

Although the information which plaintiff seeks is relevant under discovery standards, we find defendant has not placed her medical condition at issue, and even if she has, plaintiff has not shown there is a compelling state interest at play under the circumstances to justify overriding the physician-patient privilege.

378

## ORDER

Now July 18, 2002, the court denies the plaintiff's motion to dismiss defendant's objections to plaintiff's subpoena. The plaintiff may file a motion in limine to preclude defendant from presenting evidence or argument at trial to prove that the accident was not severe enough to cause the injuries plaintiff claims to have suffered.